UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

KIMBERLY STEWARD,

    Plaintiff,

v.

SAGE SOFTWARE, INC.,

    Defendant.

_____/

## COMPLAINT

Plaintiff, KIMBERLY STEWARD, by and through her undersigned counsel, sues the Defendant, SAGE SOFTWARE, INC., and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for damages and to remedy violations of the rights of MS. STEWARD under the Americans with Disabilities Act of 1990 ("ADA"), as amended including by the ADA Amendments Act of 2008, Age Discrimination in Employment Act of 1967, as amended, 29 USC § 621, et seq, ("ADEA"), as well as unjust enrichment and breach of contract to redress injuries done to her by the Defendant, SAGE SOFTWARE, INC.

2. The unlawful acts which gave rise to this Complaint occurred within Orange County, Florida during the term of Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

3. At all times material hereto, Plaintiff has been a citizen and resident of Orange County Florida and is otherwise *sui juris*.

1

4. As an older individual with a disability, Plaintiff is a member of a protected class under the ADA and ADEA because the terms, conditions, and privileges of her employment were altered because of her age and disability.

5. Defendant is a privately-owned business. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. At all times material hereto, Defendant has employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the ADA and ADEA.

7. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

8. Plaintiff's charge was filed within 300 days after the last instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on October 6, 2021. This suit is filed in accordance with that Notice and within the applicable ninety-day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. All conditions precedent to the maintenance of this action by Plaintiff have occurred or have been waived.

11. Plaintiff has retained the undersigned law firm as her legal counsel in connection with this action and is obligated to pay reasonable attorney's fees and all costs incurred in connection with this action.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

12. Plaintiff began working for Defendant as a curriculum developer in August 2015. At the time of hire, Plaintiff was 43 years old.

13. Plaintiff's primary duties and responsibilities included developing curriculum, training, support, project/product management, implementation of software accounting programs, and IT division support.

14. At all times relevant hereto, Defendant regarded Plaintiff as an individual who was over 40 years of age.

15. The Plaintiff was originally under the leadership of Ms. Robin DeLeone, Director, for a software product called Sage View. Within a few short months of the commencement of Plaintiff's employment with Defendant, Defendant retired the Sage View product and asked the Plaintiff to quickly learn a new cloud product, Sage Business Cloud Accounting (formerly known as Sage One), and to become a Subject Matter Expert ("SME") in order to create digital learning libraries for the users of that product.  Not only did the Plaintiff independently train herself on all aspects of the new product in order to meet her job duties and responsibilities; she also took the extra step of working one-on-one with the IT support team to learn the product's idiosyncrasies in order to become a true product expert.

16. Within six months, Defendant transferred Plaintiff to work under the leadership of Ms. Natalie Grizzle, Director of Learning Services, because her new product, Sage Business Cloud Accounting was a global product, as opposed to a local one. Although Ms. Grizzle was five to ten years older than the Plaintiff, Ms. Grizzle harbored significant insecurities about being an older woman and it did not take long for Ms. Grizzle to project those insecurities onto the Plaintiff.

17. Over the course of the next few years, Ms. Grizzle regularly asked the Plaintiff to take on increasingly more responsibilities above and beyond those of her curriculum developer position. The Plaintiff became the product expert and trainer for all internal technical support team

members in the Defendant's Atlanta and Canadian offices. The Plaintiff became the facilitator and trainer for multiple speaking engagements and conferences around the world.

18. From the start of Plaintiff's reassignment, Ms. Grizzle and the Plaintiff met bi-weekly to discuss work tasks. Ms. Grizzle and the Plaintiff also would discuss yearly reviews in these meetings. The Plaintiff frequently expressed her desire for a promotion. The Plaintiff expressed her passion for her job and that she felt she had outgrown her position due to her expertise and knowledge.

19. In 2017, the Plaintiff identified a tax flaw in the calculation of the software used by the Defendant's subscribers. Due to the financial repercussions to the Defendant's subscribers, the Plaintiff immediately reached out to Ms. Lisa Ewins, the Product Manager, in the United Kingdom. Instead of acknowledging the system error, Ms. Ewins and Ms. Grizzle ignored the issue. Instead, Ms. Grizzle criticized Plaintiff's delivery in bringing this issue to Ms. Ewins' attention, saying that the Plaintiff should first "build a report" with people and that although the Plaintiff was a "senior" (referring to her age), the Plaintiff was not in the position to "call anyone out." Ms. Grizzle also said, "just because you are older, does not mean others will identify this issue with the same sense of urgency." The Plaintiff was approximately 46 years old at the time.

20. Several times throughout 2017, 2018, and 2019, the Plaintiff completed anonymous company surveys and she stated on the surveys that her manager was treating her unfairly, and as a result, suffering from anxiety and depression. Ms. Grizzle gave other employees significant bonuses and paid company cell phones while giving Plaintiff the lowest bonus amount of the entire team and refusing to provide Plaintiff with a company cell phone. Although employees were told that the surveys were anonymous, Ms. Judy Magnuson, Director, told the Plaintiff the responses were given to managers upon request, and through a simple filter process, managers could easily

4

identify whose surveys were whose. Ms. Magnuson stated that the Defendant knew which survey responses came from the Plaintiff

21. In 2018, Mr. Joe Richer, Director, approached the Plaintiff to discuss hiring her for a newly-created position he wanted to fill because the Plaintiff previously assisted him in his new role with the company. During multiple conference calls, Mr. Richer reiterated that he wanted the Plaintiff to apply for and take the newly-created position as the Plaintiff was his "obvious first choice." The Plaintiff applied for the position, but Ms. Richer later called her and told her another individual was selected. The Plaintiff asked him if Ms. Grizzle gave him a recommendation on her behalf. He stated he never received a recommendation from Ms. Grizzle and in turn his team selected another individual. When the Plaintiff asked for clarification, he stated that Ms. Grizzle never responded to his requests to move the Plaintiff into the new position. Ms. Grizzle told the Plaintiff that she felt that Ms. Kathleen Hakin, who was 10 to 15 years younger than the Plaintiff, was a "better fit." Specifically, when the Plaintiff questioned Ms. Grizzle on her decision, she said, "Kathleen Hakin, a younger candidate is a better fit."

22. In 2018/2019, Ms. Sandra Hovarth, Director of Business Relations for Canada, approached the Plaintiff and stated that she recognized the Plaintiff's expertise and leadership ability with the Sage Accounting product. Ms. Hovarth inquired if the Plaintiff could assist with the very large United States portion and take the lead on the education program for all tier 1 and tier 2 colleges and universities in North America. With these additional responsibilities, the Plaintiff became the point of contact for all education-related requests, including the setup, implementation, and training for the product, post training support, and complex and technical management of the education webpage with the entire marketing department for both Canada and the United States. The Plaintiff had no previous experience in marketing, but she jumped in with

both feet working passionately and collaboratively with the marketing team. The Plaintiff became an advocate for the program and fought to strengthen its presence at more colleges and universities.

23. The Plaintiff so greatly excelled in this project that Ms. Horvath asked the Plaintiff if she was interested in leaving her position under Ms. Grizzle to work under Ms. Horvath's leadership as the education manager for the program. Unfortunately, Ms. Grizzle prevented this from coming to fruition. Ms. Hovarth tried to meet with Ms. Grizzle several times in order to implement this change, but Ms. Grizzle repeatedly canceled meetings or made herself otherwise unavailable to Ms. Hovarth. As a result of Ms. Grizzle's failure to respond to Ms. Horvath, the program declined due to a lack of resources.

24. After Ms. Grizzle again prevented Plaintiff from advancing her career, the Plaintiff met with Ms. Grizzle to discuss Ms. Grizzle's discriminatory treatment of the Plaintiff. The Plaintiff told Ms. Grizzle that she was no longer going to tolerate her comments regarding the Plaintiff's age, length of time working for the Defendant, and retaliation for defending herself. After this conversation, Ms. Grizzle increasingly retaliated against the Plaintiff.

25. When the Plaintiff reached out to Ms. Grizzle for supervisor support, Ms. Grizzle either ignored Plaintiff or intentionally misdirected Plaintiff. The Plaintiff would request volunteer paid time off (an employee is permitted one week of paid time off to volunteer with any charity of their choice) and Ms. Grizzle approved everyone else's volunteer paid time off except for the Plaintiff. When the Plaintiff asked Ms. Grizzle did not approve Plaintiff's volunteer paid time off, Ms. Grizzle responded, "Kim, you picked an animal shelter. Perhaps something like a soup kitchen, it would be easier for someone your age?"

26. In 2019, after Plaintiff complained to Ms. Grizzle about the discrimination, Ms. Grizzle gave the Plaintiff a performance review and, in one category, gave the Plaintiff a

designation of "working towards." Prior to this evaluation, the Plaintiff received excellent reviews. The Plaintiff asked Ms. Grizzle to explain the reason for this designation, particularly when she had been assigned to independently handle one of the largest software products, and when Ms. Grizzle repeatedly cancelled one-on-one meetings that year which would have been the appropriate time to discuss any performance issues The Plaintiff said that it was obvious that it was not until Plaintiff began objecting to Ms. Grizzle's discriminatory treatment that Ms. Grizzle lowered the Plaintiff's rating on her performance reviews. Ms. Grizzle did not respond to the Plaintiff's questions. Instead, Ms. Grizzle said, "it is nothing to worry about but for your level, you should be doing things quicker." Ms. Grizzle did not provide any example of what the Plaintiff should "be doing quicker." Based on Ms. Grizzle's prior comments about Plaintiff's age, the Plaintiff also asked Ms. Grizzle what age had to do with wanting a promotion, but she remained silent. Ms. Grizzle gave the Plaintiff had other performance reviews in 2019 and continued to rate Plaintiff as "working towards."

27.    Ms. Grizzle regularly gave the Plaintiff random projects without any training or prior experience in the hopes that Plaintiff would fail. Ms. Grizzle provided training to other employees. As the Plaintiff was working on one of these random projects, Ms. Grizzle would abruptly remove her from the project. On one occasion, Ms. Grizzle put the Plaintiff on a project where she was working with others. The Plaintiff did everything she was instructed to do by other members of the team. Despite this, Ms. Grizzle told the Plaintiff, "I expected so much more from you." The Plaintiff was shocked because out of all the teammates, she was the only one who finished her project, and did so on time and as it was asked of her.

7

28. Increasingly frustrated and demoralized by Ms. Grizzle's treatment of her, the Plaintiff spoke with Mr. Gaude, Vice President, and complained about Ms. Grizzle's discriminatory and retaliatory treatment. Mr. Gaude refused to intervene or otherwise get involved.

29. Shortly after Plaintiff's discussion with Mr. Gaude, Ms. Grizzle said that she was going to put the Plaintiff on a performance plan. During their call, the Plaintiff told Ms. Grizzle that she would like someone to be on all of the meetings/conference calls between them going forward. Ms. Grizzle denied the Plaintiff's request and said, "no one is going to believe you. I have been here 20 years."

30. Ms. Grizzle sent the Plaintiff the performance review plan and instructed Plaintiff to sign it. The Plaintiff received the review in July/August 2020. Around that same time, Ms. Grizzle requested a Zoom meeting with Ms. Lisa Godwin, Human Resources, and the Plaintiff. During this meeting, Ms. Grizzle began to read the accusations against the Plaintiff written on the performance plan. Ms. Grizzle falsely claimed that the Plaintiff needed to improve her timekeeping efforts. Specifically, Ms. Grizzle asked the Plaintiff if she had "memory issues" and stated, "as we get older, our memories become less and less." The Plaintiff responded by stating that the comments on the performance review were without merit and unfounded. Ms. Grizzle continuously changed how and when she wanted the Plaintiff's time tracking done, different than any of the Plaintiff's colleagues. Ms. Grizzle required that the Plaintiff track her time in approximately five different locations, while she required other employees to track their time in only one central area. For a period of time, no one had timecards as they were all salaried employees. Sometime in 2017 or 2018, the Defendant instructed employees to begin tracking their time. Many employees still did not track their time or did it late, yet they were not reprimanded,

and some were even promoted. Ms. Grizzle regularly changed how the Plaintiff should track her time.

31. During this meeting, Ms. Grizzle also claimed that Plaintiff needed to improve her "project management" skills. Plaintiff reminded Ms. Grizzle that she was a curriculum developer and remained one despite her repeated requests for a promotion/transfer, and thus was not a project manager. Ms. Godwin and Ms. Grizzle demanded that the Plaintiff sign the performance plan. The Plaintiff responded that she did not want to sign it because she did not agree with it. Ms. Godwin and Ms. Grizzle told the Plaintiff to "sign it by the end of the day or else."

32. Over the months, Ms. Grizzle's treatment caused Plaintiff to experience feelings of depression and anxiety. The meeting significantly exacerbated those feelings.

33. After the meeting, Plaintiff sought medical treatment. She contacted a psychiatrist after hours who, after speaking with the Plaintiff, wanted to immediately admit her for psychiatric evaluation and treatment. -However, due to the high risk of Covid-19 infection and lack of beds, the psychiatrist opted to aggressively treat the Plaintiff through daily telehealth appointments combined with medication.

34. In August 2020, the Plaintiff filed for FMLA and short term disability leave due to her disability of anxiety and depression. The Plaintiff submitted the necessary paperwork and medical documentation through Defendant's third-party benefits administrator, which approved Plaintiff's leave

35. In or around November 2020, when the Plaintiff was scheduled to return to work, the Plaintiff's doctor decided that she was not ready to return and extended her leave. At the same time, the Plaintiff's doctor contracted Covid-19 and informed her that he was immediately retiring from practice and that she would need to transition to a new doctor. He also suggested that the

Plaintiff apply for long term disability. In order to be obtain long term disability, Plaintiff needed to submit disability paperwork completed by her treating physician. Since her previous physician retired immediately due to Covid-19 infection, Plaintiff struggled to find a new doctor who would complete the necessary paperwork. Plaintiff called every provider both on and off her insurance plan in order to schedule new patient appointments and obtain the necessary paperwork. None of the medical providers could complete and provide the disability paperwork until the Plaintiff had been a patient of record for 90 to 120 days.

36. The Plaintiff was out from work until January 2021. In January 2021, when the Plaintiff was scheduled to return to work, she was diagnosed with Covid-19. Due to complications from Covid-19, the Plaintiff suffered from a buildup of fluid around her heart and lungs known as pericardial effusion and she was placed on a heart monitor because she was having severe heart palpations.

37. Because of Plaintiff's Covid-19 complications and her inability to obtain the medical documentation necessary for long-term disability, Plaintiff sought an extension of her leave. Defendant denied Plaintiff's request and required Plaintiff to return to work or Defendant would terminate her employment.

38. Resigned to having to return to work, Plaintiff contacted Ms. Natalie Connery, Human Resources, and requested, once again, that Defendant move her from under the leadership of Ms. Grizzle. This was the Plaintiff's 5th request to be moved away from Ms. Grizzle. Due to the Plaintiff's disability, she could not work in such a toxic and discriminatory environment. Ms. Connery denied the Plaintiff's request. Plaintiff contacted Ms. Lisa Godwin about reassignment, but she also denied the Plaintiff's request.

39. The Plaintiff returned to work in mid-February 2021. The Plaintiff reached out to Ms. Grizzle twice to tell her that she was returning to work, but Ms. Grizzle did not return Plaintiff's messages. The day the Plaintiff returned to work, she opened her laptop and discovered that the laptop's battery was low and that her power cord did not work. The Plaintiff called Keith, in desktop support, and told him that she needed a new power cord and he said he would send her one. A few days later, with the new power cord able to power the laptop, Plaintiff attempted to log-in to work but her log-in credentials did not work because the Defendant failed to reauthorize the Plaintiff's credentials to access the system. The Plaintiff called Ms. Grizzle to let her know that she was unable to access the network. During the conversation, Plaintiff also informed Ms. Grizzle that she was on a heart monitor and that she needed an alternative schedule that allowed her to split up her shifts because she could not sit at a computer for 10 hours straight. Ms. Grizzle did not respond or even acknowledge this request and the conversation ended shortly thereafter.

40. Next, the Plaintiff called IT desktop support and told them that she could not get into the network. IT support said that it was not the Plaintiff's fault because the Defendant should have reauthorized her credentials upon her return to work. IT support said the only thing they could do was send the Plaintiff a new computer.

41. The next day, Ms. Grizzle and Ms. Godwin called the Plaintiff and reprimanded her for "not being ready to come back to work." The Plaintiff replied to Ms. Godwin, "you failed your due diligence and did not put me back in the system." Ms. Godwin responded, "it was a minor issue and not a big deal. I have had this problem before." Ms. Godwin and Ms. Grizzle were upset that the Plaintiff called IT and disclosed that they failed to put Plaintiff back in the system.

42. It took a few days for the Plaintiff's new laptop to arrive. Without the Plaintiff's permission, Ms. Grizzle applied Plaintiff's PTO to those days during which Plaintiff was without

a laptop due to Defendant's failure in reauthorizing Plaintiff's access. The Plaintiff asked Ms. Grizzle to return her PTO because the time off was not her fault, but Defendant's own fault. Defendant did not return the Plaintiff's PTO.

43. On February 19, 2021, Ms. Stacy Pinion, People Services Specialist, called the Plaintiff and terminated her employment because she was allegedly "not prepared to return to work."

44. The Plaintiff returned the laptop to Defendant, but the Defendant never paid the Plaintiff her final paycheck in the total amount of approximately $2,000.00. Defendant also failed to pay out Plaintiff's accrued but unused PTO in the amount of approximately $5,000.00, which, pursuant to Defendant's policy, is to be paid out to an employee at the end of employment, regardless of the circumstances under which the employment relationship ends.

45. Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")
**(Discrimination on the Basis of Disability)**

46. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 45, inclusive, as though same were fully re-written here.

47. The ADA forbids discrimination based on disability; prohibiting discrimination in employment, public services, public accommodations, and telecommunications.

48. Plaintiff has a disability as that term is defined under the ADA, and, therefore, is a member of the protected class. Specifically, Plaintiff suffers from anxiety and depression, which conditions inhibit and/or limit a major life activity.

49. At all relevant and material times, Defendant failed to comply with the ADA.

50. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

51. At the time of the unlawful discrimination, failure to provide a reasonable accommodation, and termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

52. Plaintiff was qualified for the position.

53. Defendant is a large institution, and therefore a sophisticated employer who has actual knowledge of the requirements of the ADA, as amended.

54. The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

55. The Defendant's failure to communicate with the Plaintiff, thus denying her request for a reasonable accommodation, failing to engage in the interactive process, and ultimately terminating her, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

56. Because the Plaintiff had a disability, Defendant, through its employees, did not respond when the Plaintiff requested a split shift and ultimately terminated the Plaintiff.

57. Any allegedly nondiscriminatory reason for the Defendant's failure to reasonably accommodate Plaintiff and for ultimately terminating her employment is a mere pretext for the actual reasons for the failure to reasonably accommodate and for Defendant's termination of Plaintiff; inter alia Plaintiff's disability.

58. Upon information and belief, the Defendant does not treat non-disabled employees in the same manner as Defendant treated Plaintiff.

59. As a result of Defendant's violation, Plaintiff has suffered damages.

60. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

61. The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

62. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her disability in violation of the ADA with respect to its decision to treat Plaintiff differently from other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the ADA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate.

### COUNT II: VIOLATION OF THE ADEA
**(Discrimination on the Basis of Age)**

63. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 45, inclusive, as though same were fully re-written here.

64. Because Plaintiff is an older woman, the Defendant discriminated against the Plaintiff, and the Defendant refused to take any action to prevent the discrimination.

65. Upon information and belief, younger, similarly situated employees are not treated in the same manner as Defendant treated Plaintiff.

66. Upon information and belief, younger, similarly situated employees are not permitted to be harassed by management.

67. Upon information and belief, the Defendant takes seriously the complaints of younger, similarly situated employees.

68. Defendant did not have a legitimate, non-discriminatory reason for targeting the Plaintiff due to her age, making obscene comments regarding her age, and denying her the same benefits and opportunities given to younger employees.

69. Defendant had no good faith basis for discriminating against the Plaintiff by treating her differently than younger employees. Defendant based its actions on Plaintiff's age, and Plaintiff is entitled to liquidated damages based on these actions.

WHEREFORE, Plaintiff hereby requests that this Court issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the ADEA; require that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff judgment against Defendant to compensate her for all lost wages and benefits, together with liquidated damages for Defendant's willful violation of the ADA, attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate

### COUNT III: VIOLATION OF ADA
**(Retaliation)**

70. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 45, inclusive, as though same were fully re-written here.

71. Plaintiff has a disability as is defined under the ADA. Specifically, Plaintiff suffers from anxiety and depression, which conditions inhibit and/or limit a major life activity.

72. Defendant is an employer as that term is defined under the ADA.

73. Defendant retaliated against Plaintiff for engaging in the protected activity of complaining of discrimination against her by inter alia, terminating the Plaintiff's employment.

74. As a result of Defendant's violation, Plaintiff has suffered damages.

75. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

76. The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

77. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, retaliated against Plaintiff for exercising her statutory right of complaining of discrimination. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by

16

Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the ADA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate.

### COUNT IV: VIOLATION OF ADEA
### (Retaliation)

78. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 45, inclusive, as though same were fully re-written here.

79. Because Plaintiff is an older woman, the Defendant retaliated against Plaintiff for engaging in the protected activity of complaining of discrimination against her by inter alia, terminating the Plaintiff's employment.

80. At all times relevant hereto, Defendant regarded Plaintiff as an individual who was over 40 years of age.

81. Defendant is an employer as that term is defined under the ADEA.

82. Defendant retaliated against Plaintiff for engaging in the protected activity of complaining of discrimination against her by inter alia, terminating the Plaintiff's employment.

83. As a result of Defendant's violation, Plaintiff has suffered damages.

84. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests that this Court issue a declaratory judgment that the retaliation against Plaintiff by Defendant was a violation of Plaintiff's rights under the ADEA; require that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination

through reinstatement, or, if that is not practical, through an award of front pay; grant Plaintiff judgment against Defendant to compensate her for all lost wages and benefits, together with liquidated damages for Defendant's willful violation of the ADA, attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate

## COUNT V: BREACH OF CONTRACT

85. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 45, inclusive, as though same were fully re-written here.

86. Plaintiff and Defendant, entered into a verbal contract, pursuant to which Plaintiff agreed to provide services to Defendant in exchange for compensation in the amount of $75,000.00 per year.

87. Defendant breached the contract by, *inter alia*, failing to pay Plaintiff for all hours worked.

88. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including, but not limited to, the loss of money not paid to Plaintiff in exchange for her services.

89. Plaintiff has engaged the undersigned attorney and will incur attorneys' fees, for which fees Defendant is liable pursuant to section 448.08, Florida Statutes.

WHEREFORE, the Plaintiff, demands judgment against Defendant for damages, together with prejudgment and post judgment interest thereon, attorneys' fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT VI: BREACH OF CONTRACT

90. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 45, inclusive, as though same were fully re-written here.

91. Plaintiff and Defendant, entered into a written contract in the form of Defendant's policies, pursuant to which Plaintiff agreed to pay out any unused paid time off ("PTO") at the end of the Plaintiff's employment relationship with Defendant.

92. Defendant breached the contract by, *inter alia*, failing to pay Plaintiff for all unused PTO in the amount of approximately $5,000.00.

93. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including, but not limited to, the loss of money not paid to Plaintiff for her accrued but unused PTO.

94. Plaintiff has engaged the undersigned attorney and will incur attorneys' fees, for which fees Defendant is liable pursuant to section 448.08, Florida Statutes.

WHEREFORE, the Plaintiff, demands judgment against Defendant for damages, together with prejudgment and post judgment interest thereon, attorneys' fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT VII: UNJUST ENRICHMENT

95. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 45, inclusive, as though same were fully re-written here.

96. Plaintiff provided services to Defendant by serving as curriculum developer.

97. By serving as a curriculum developer to Defendant, Plaintiff conferred a benefit on Defendant, and Defendant had knowledge of that benefit.

98. Defendant voluntarily accepted and retained that benefit conferred on them by Plaintiff.

99. The circumstances are such that Defendant's retention of the benefit is inequitable unless the Defendant pays to Plaintiff the value of the benefit.

100. Defendant has been unjustly enriched at the expense of the Plaintiff.

101. Plaintiff is entitled to damages as a result of Defendant's unjust enrichment.

102. Plaintiff has engaged the undersigned attorney and will incur attorneys' fees, for which fees Defendant is liable pursuant to section 448.08, Florida Statutes.

WHEREFORE, Plaintiff hereby demands judgment against Defendant for all damages, together with prejudgment and post judgment interest, attorneys' fees, costs, and such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 4th day of January, 2022

By: s/Michelle Cohen Levy
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff